IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID RUFFING | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WIPRO LIMITED | : | NO. 20-5545 |

MEMORANDUM

Bartle, J.                                          March 29, 2021

Plaintiff David Ruffing has sued defendant Wipro
Limited for violations of: (1) the Fair Labor Standards Act of
1938 ("FLSA"), 29 U.S.C. §§ 201 et seq.; (2) the Pennsylvania
Wage Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat.
§§ 260.1 et seq.; (3) the Pennsylvania Human Relations Act
("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq.; (4) the Age
Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.
§§ 621 et seq.; and (5) the Civil Rights Act of 1866 ("CRA"), 42
U.S.C. §§ 2000e et seq.  Plaintiff brings a collective action
under the FLSA and a putative class action under the PWPCL on
behalf of himself and other similarly situated individuals who
are or were employed by defendant as non-exempt data center
employees in the three years prior to the filing of this action.

Defendant moves to dismiss for lack of personal
jurisdiction the FLSA claims in Counts I and II of the amended
complaint insofar as those claims include employees of defendant

who work or worked outside of Pennsylvania.  Defendant also
seeks dismissal of: (1) Count II for failure to state a
cognizable FLSA claim; (2) the class claims under the PWPCL in
Count III for failure to plead impracticability of joinder and
numerosity; and (3) Count V for failure to exhaust
administrative remedies under the PHRA.

                                I

        The following facts pleaded in the amended complaint
are taken in the light most favorable to plaintiff.  He is a
sixty-one year-old white male residing in Pennsylvania.
Defendant is an Indian information technology corporation with
its principal place of business in Bangalore, India. Defendant
employs over 180,000 individuals worldwide and does business in
West Norriton, Pennsylvania where plaintiff worked until 2019.

        Plaintiff was employed as a Senior Operations Analyst
for Quest Diagnostics for thirty years with high performance
reviews.  In October 2013, Quest "outsourced" its West Norriton
data center to defendant.  He remained as a Senior Operations
Analyst employed by defendant and continued to receive excellent
performance reviews.  His rate of pay was $37.57 per hour, plus
overtime, which totaled approximately $100,000 per year.

        Plaintiff avers he and other employees routinely
worked in excess of forty hours a week to operate the data
center and had contracts with defendant to be paid at specified

                              -2-

hourly rates including federally-mandated overtime.  Defendant
implemented a cumbersome manual timekeeping system to track
overtime hours which required employees to request pre-approval
from management before working overtime and then to log that
time into a system in one-hour increments.  This system was not
conducive to these requirements when employees had to stay late
unexpectedly without the ability to request pre-approval or when
they worked overtime that was shorter than a one-hour shift.  In
addition, defendant frequently paid employees late for overtime
work.

In 2019 plaintiff complained in writing to management
and the payroll department about the failure to pay employees
for overtime in a timely manner.  Defendant changed the method
for recording overtime work and accused plaintiff of not working
the hours he had recorded.  An investigation showed no evidence
to support defendant's accusation.  Plaintiff continued working
overtime but went uncompensated for this work.

Shortly after plaintiff complained about the overtime
system, defendant hired a non-white employee in his twenties and
assigned him to plaintiff's shift for plaintiff to train.  Once
the new employee was trained, defendant terminated plaintiff's
employment in August 2019 without any explanation and replaced
him with the new employee.  Plaintiff avers that weeks after he
was fired he asked his former manager the reason for his

termination.  His manager informed him that defendant only wants
to hire young people.

Plaintiff filed a Charge of Discrimination with the
Equal Employment Opportunity Commission ("EEOC") and the
Pennsylvania Human Relations Commission ("PHRC").  On August 7,
2020, the EEOC issued plaintiff a notice of his right to sue.
He filed his Charge of Discrimination with the PHRC in June 2020
and has not yet received a right to sue letter.[1]

II

Defendant first moves to dismiss the FLSA claims for
lack of personal jurisdiction under Rule 12(b)(2) of the Federal
Rules of Civil Procedure to the extent the claims are asserted
on behalf of employees of defendant who work or worked outside
of Pennsylvania.  When personal jurisdiction is challenged, the
plaintiff bears the burden of showing that personal jurisdiction
exists.  Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007).
At this stage the plaintiff must establish only "a prima facie
case of personal jurisdiction" and is entitled to have his
allegations taken as true and all factual disputes drawn in his
favor.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d

---

1.  Plaintiff states the undisputed facts concerning the date
of the filing of the PHRC complaint and the failure to receive a
right to sue letter in his opposition to defendant's motion to
dismiss.

Cir. 2004).  Nonetheless, the plaintiff must allege "specific facts" rather than vague or conclusory assertions.  <u>Marten</u>, 499 F.3d at 298.

Rule 4(k) of the Federal Rules of Civil Procedure sets forth the territorial limits for effective service.  It provides in relevant part:

> (1)  Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
> > (A)  who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.[2]

Since no other provision of Rule 4(k) is applicable, service in an action under the FLSA and thus personal jurisdiction of this court can extend no further than the permissible limits of personal jurisdiction of the state where this court sits.  <u>See</u> <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 125 (2014).  As the Supreme Court has stated, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction."  <u>Id.</u>

The law of Pennsylvania, the forum state, provides for personal jurisdiction coextensive with that allowed by the Due

---

2.  Rule 4(k)(1)(C) provides that service of a summons establishes personal jurisdiction "when authorized by a federal statute."  The FLSA does not reference service of process.  <u>See</u> <u>Weirbach v. Cellular Connection, LLC</u>, 478 F. Supp. 3d 544, 551 (E.D. Pa. 2020).  Thus, the court must look to Rule 4(k)(1)(A).

Process Clause of the United States Constitution.  42 Pa. Cons. Stat. Ann. § 5322(b).  Thus, the court must determine the extent to which the Due Process Clause of the Fourteenth Amendment would allow Pennsylvania courts to exercise personal jurisdiction in this action.

Under the Due Process Clause of the Fourteenth Amendment, a state court may exercise personal jurisdiction only over defendants who have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Due process gives rise to two recognized categories of personal jurisdiction: general jurisdiction, or "all-purpose" jurisdiction, and specific jurisdiction, or "case-linked" jurisdiction.  Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1779-80 (2017).

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  Id. at 1780.  The Supreme Court has held that "the paradigm forum for the exercise of general jurisdiction" over a corporation is "one in which the corporation is fairly regarded as at home."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).  A corporation is at home in the state where it was incorporated,

has its principal place of business, or, "in an exceptional case," where its operations "may be so substantial and of such a nature as to render the corporation at home in that State." Daimler, 571 U.S. at 137, 139 n.19.

Specific jurisdiction, on the other hand, exists when the suit arises out of or relates "to the defendant's contacts with the forum."  Bristol-Myers Squibb, 137 S. Ct. at 1780.  The Supreme Court explained that "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  Id. (quoting Goodyear, 564 U.S. at 919).

The FLSA sets forth minimum wage requirements and maximum hour limitations for work as well as provisions for overtime pay.  29 U.S.C. §§ 206, 207.  To enforce these rights under the FLSA, an employee may bring an action against his employer "in behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party."  29 U.S.C. § 216(b).  Unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, a person seeking to participate in a FLSA collective action must affirmatively opt-in through written consent.  Halle v. W. Penn

Allegheny Health Sys. Inc., 842 F.3d 215, 224-25 (3d Cir. 2016).
There is no opt-out procedure.

The mere act of filing a complaint in a FLSA
collective action "does not automatically give rise to the kind
of aggregate litigation provided for in Rule 23" since it relies
on "the affirmative participation of opt-in plaintiffs." Id. at
224.  The requirement for potential plaintiffs to opt-in "is the
most conspicuous difference between the FLSA collective action
device and a class action under Rule 23." Id. at 225.  Those
who opt-in to the FLSA collective action become actual parties
to the litigation unlike class members in a Rule 23 action.[3]  Id.

Defendant argues that any claims on behalf of
employees who do not work or did not work in Pennsylvania should
be dismissed because general personal jurisdiction does not
exist.  It stresses that it is not incorporated in the
Commonwealth, does not have its principal place of business
here, and does not meet the high bar as an "exceptional case."

_____

3.    Plaintiff argues that it is premature to deal with personal
jurisdiction of non-Pennsylvania persons who have not yet opted
in.  The court is not persuaded.  The issue of personal
jurisdiction is properly raised at this stage before defendant
files an answer.  As stated in Rule 12(b), "[a] motion asserting
any of these defenses [including a motion for lack of personal
jurisdiction] must be made before pleading if a responsive
pleading is allowed." See Vallone v. CJS Solutions Grp., LLC,
437 F. Supp. 3d 687, 690-91 (D. Minn. 2020).

Plaintiff does not challenge these facts.  Instead, he counters that defendant has registered to do business in Pennsylvania and has thus consented under Pennsylvania law to the exercise of general personal jurisdiction over all claims against it.  Section 5301 of title 42 of the Pennsylvania Consolidated Statutes states that registration as a foreign corporation "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction."  42 Pa. Cons. Stat. Ann. § 5301(a).  The crucial question is whether defendant's registration to do business in Pennsylvania passes muster under due process so as to subject it to suit in this court for FLSA claims of individuals who are not or were not employed by defendant in Pennsylvania and thus suffered no loss here.

Plaintiff relies on the decision of our Court of Appeals in Bane v. Netlink, Inc., 925 F.2d 637 (3d Cir. 1991).  There the plaintiff brought suit in the Eastern District of Pennsylvania against his former employer for firing him in violation of the ADEA.  None of the defendant's conduct in question occurred in Pennsylvania, and Pennsylvania was not its state of incorporation or the location of its principal place of business.  It merely sold products in the Commonwealth, and its employees occasionally travelled to the state on business.  The Court of Appeals held that "Pennsylvania law explicitly states

that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction." Id. at 640.  It explained that registering to do business in Pennsylvania "carries with it consent to be sued in Pennsylvania courts." Id.

A seismic change has taken place in the world of personal jurisdiction in the thirty years since Bane was decided.  In 2014 the Supreme Court issued a landmark decision on general personal jurisdiction in Daimler AG v. Bauman.  571 U.S. at 121.  That action asserting claims under both federal and state law had been brought in a federal district court in California.  Like Pennsylvania, California has a statute extending personal jurisdiction as far as allowed under the Constitution.  The Court held that except in very narrow circumstances the Due Process Clause of the Fourteenth Amendment precludes a district court from exercising general personal jurisdiction over a foreign corporation for both federal and state law claims where the underlying events occurred entirely outside the forum state.

The Court reiterated its 2011 holding in Goodyear Dunlop Tires Operations, S.A. v. Brown that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Id. at 137; see also Goodyear, 564 U.S. at 929.  As noted above, a defendant is only subject to

-10-

a court's general personal jurisdiction in those states in which it is "at home," which, for a corporation, is the state of incorporation or its principal place of business, unless there are exceptional circumstances where the corporation's operations are "so substantial and of such a nature as to render the corporation at home in that State."  Id. at 139, 139 n.19.

The sole example of an "exceptional case" cited by the Court was Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952).  Perkins involved a suit filed in an Ohio state court against a Filipino-based company which had ceased operations in the Philippines during the Japanese occupation during World War II, and at the time the suit was filed, the head of the company was directing all of the company's activities from Ohio.  The conduct involved in the lawsuit did not relate to the company's activities in Ohio.  The Court found that Ohio could be considered the company's "surrogate for the place of incorporation or head office."  Daimler, 571 U.S. at 130 n.8.  Perkins is not applicable here.

In the wake of Daimler, the question remains whether Bane continues to be controlling law.  Our Court of Appeals has not spoken on the issue of Pennsylvania's consent law since Bane, and district courts in this circuit are divided.[4]

_____

4.    A number of other courts in this district have continued to follow Bane.  See e.g., Kraus v. Alcatel-Lucent, 441 F. Supp. 3d

This court finds persuasive Judge Robreno's decision in <u>Sullivan v. A.W. Chesterton, Inc.</u>, 384 F. Supp. 3d 532 (E.D. Pa. 2019), a personal injury action brought in the Eastern District of Pennsylvania on behalf of a decedent against various defendants for his exposure to asbestos.  The plaintiff alleged that the exposure took place aboard a Naval ship outside of Pennsylvania.  One defendant moved for dismissal for lack of personal jurisdiction since it was incorporated and had its principal place of business in Virginia.  Plaintiff argued that defendant had consented to jurisdiction under Pennsylvania law because it was registered to do business there.  <u>Sullivan</u> held that the Pennsylvania law offended due process.  It concluded that <u>Bane</u> was irreconcilable with <u>Daimler</u> and should not be followed.  It reasoned that since the statutory scheme is mandatory in order to conduct business in Pennsylvania defendant's consent was not voluntary and was therefore "not true consent at all."  <u>Id.</u> at 542.

This court recognizes, as does <u>Sullivan</u>, that district courts are bound to follow precedent of the Court of Appeals unless a later Supreme Court decision supersedes it.  Our Court of Appeals explained in <u>Planned Parenthood of Southeastern</u>

---

68 (E.D. Pa. 2020); <u>Sciortino v. Jarden, Inc.</u>, 395 F. Supp. 3d 429 (E.D. Pa. 2019); <u>Aetna Inc. v. Kurtzman Carson Consultants, LLC</u>, 2019 WL 1440046 (E.D. Pa. March 29, 2019).

Pennsylvania v. Casey that "[a]s a lower court, we are bound by both the Supreme Court's choice of legal standard or test and by the result it reaches under that standard or test."  947 F.2d 682, 691-92 (3d Cir. 1991).  However, when the Supreme Court replaces a constitutional standard under which a previous decision was rendered, "decisions reached under the old standard are not binding."  Id. at 697-98.  It reiterated "a change in the legal test or standard governing a particular area is a change binding on lower courts that makes results reached under a repudiated legal standard no longer binding."  Id. at 698.

The Supreme Court in Daimler limited the contours of general personal jurisdiction under the Due Process Clause of the Fourteenth Amendment over a foreign defendant to "a limited set of affiliations with a forum" so that a defendant is only subject to suit based on general jurisdiction in those states in which it is at home.  Daimler, 571 U.S. at 137.  Except for "an exceptional case," not relevant here, a defendant is at home only where it is incorporated or has its principal place of business.  Id. at 139.  Daimler repudiated the rule that general personal jurisdiction existed whenever a corporation's contacts with a state were "continuous and systematic."  See Int'l Shoe, 326 U.S. at 317.  That was the standard for general personal jurisdiction that Bane recognized, although Bane did not rule based on that standard in light of the Pennsylvania consent

-13-

statute.  As the standard for determining general personal jurisdiction has changed since <u>Bane</u> was decided, we agree that <u>Bane</u> is no longer binding on this court.

<u>Daimler</u>, it is true, did not deal with the issue of a state "consent" statute such as exists in Pennsylvania. Nonetheless, in our view the validity of such a statute would totally undermine <u>Daimler</u>.  The Supreme Court's decision limiting general personal jurisdiction would become virtually meaningless if a state can mandate the exercise of general personal jurisdiction over every entity doing business within its borders simply because the entity has registered to do business there.  Parties, of course, may agree to a forum selection clause in a contract or waive the defense of personal jurisdiction. <u>See</u> <u>Ins. Corp. of Ireland, Ltd. V. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702-07 (1982).  These acts of course are voluntary.  That is not what happened here. Requiring an entity to choose between being subject to unlimited general personal jurisdiction or not doing business in a state is simply not a voluntary choice and is inconsistent with due process.  <u>See</u> <u>Genuine Parts Co. v. Cepec</u>, 137 A.3d 123 (Del. 2016).

This court is also mindful of the international ramifications of exercising general personal jurisdiction over the defendant, which is an Indian corporation with its principal

-14-

place of business in that country.  The Supreme Court noted in
Daimler that "the transnational context of this dispute bears
attention" and that the Court of Appeals for the Ninth Circuit
failed to heed "the risks to international comity" by subjecting
a foreign corporation to its "expansive view of general
jurisdiction."  Id. at 140-41.

        The Supreme Court noted in Bristol-Myers Squibb Co. v.
Superior Court of California that restrictions on personal
jurisdiction "are a consequence of territorial limitations on
the power of the respective States" and that "the Due Process
Clause, acting as an instrument of interstate federalism, may
sometimes act to divest the State of its power to render a valid
judgment."[5]  137 S. Ct. at 1780-81.  Personal jurisdiction is not
a matter of convenience of the parties or a matter of judicial
economy.  As the Supreme Court has stated, "'the primary
concern' is 'the burden on the defendant.'"  Id. at 1780
(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
292 (1980)).

_____

5.   Bristol-Myers Squibb was an appeal from the California
Supreme Court and thus discussed the limitations of the
Fourteenth Amendment on personal jurisdiction in the context of
a state's courts.  137 S. Ct. at 1779.  The Supreme Court in
Daimler, however, also applied the principles of the Due Process
Clause of the Fourteenth Amendment to a federal district court
in limiting the district court's general personal jurisdiction.
571 U.S. at 120-21.

Accordingly, this court finds that it lacks general personal jurisdiction to the extent that plaintiff brings claims under the FLSA on behalf of any persons not employed and thus not harmed by defendant in Pennsylvania.

III

Plaintiff further argues that the limitations of Bristol-Myers Squibb on specific personal jurisdiction should not apply to the FLSA because the FLSA is a class action in which the named plaintiff is representing all those who are similarly situated, regardless of where their losses took place. This argument is without merit.  As noted above, the FLSA is not a class action as understood under Rule 23.  Under the FLSA, individuals must opt-in to the lawsuit to participate, and when they do so, they become named party plaintiffs and are bound by the outcome.  Halle, 842 F.3d at 225; Weirbach v. Cellular Connection, LLC, 478 F. Supp. 3d 544 (E.D. Pa. 2020).

We see no reason why the due process analysis in Bristol-Myers Squibb for personal jurisdiction should not apply to the FLSA.  Contrary to plaintiff's position, collective actions will not be curtailed so long as there is compliance with due process.  It must be remembered that limits on personal jurisdiction are designed primarily to protect defendants and not to promote the convenience of plaintiffs.  Bristol-Myers Squibb, 137 S. Ct. at 1779.

-16-

Moreover, the FLSA does not include any provision for nationwide service of process unlike, for example, the Clayton Act.  <u>See</u> 15 U.S.C. § 22.  As the district court noted in <u>Weirbach v. Cellular Connection, LLC</u>, "Congress did not intend to subject employers to nationwide collection actions wherever they had employees" as it had provided under other statutes. 478 F. Supp. 3d at 551-52.  In light of the due process limitations on personal jurisdiction set forth in <u>Daimler</u> and subsequently in <u>Bristol-Myers Squibb</u>, we agree with <u>Weirbach</u> that due process prohibits the exercise of specific personal jurisdiction over defendant to resolve claims of its employees who suffered harm outside of Pennsylvania.

IV

Defendant seeks to dismiss Count II of plaintiff's amended complaint for violation of the FLSA for "failure to pay wages."  Defendant argues that Count I of the amended complaint already provides a separate cause of action for alleged overtime violations while Count II impermissibly seeks wages for "gap time."  The Court of Appeals has explained that gap time

> refers to time that is not covered by the
> overtime provisions because it does not exceed
> the overtime limit, and to time that is not
> covered by the minimum wage provisions because,
> even though it is uncompensated, the employees
> are still being paid a minimum wage when their
> salaries are averaged across their actual time
> worked.

-17-

<u>Davis v. Abington Memorial Hosp.</u>, 765 F.3d 236, 243 (3d Cir. 2014).   "Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages – that is, wages for unpaid work during pay periods without overtime" since the FLSA "requires payment of minimum wages and overtime wages only." <u>Id.</u> at 244.   Plaintiff counters in his opposition to defendant's motion that he has not brought any claim for non-overtime "gap time" and that his claims solely relate to unpaid overtime compensation and untimely payment of overtime compensation.

The law within this Circuit requires a plaintiff to "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours." <u>Id.</u> at 241-42.   Plaintiff has pleaded that it was routine for him and other similarly situated plaintiffs "to work in excess of forty hours in a workweek" and that defendant's timekeeping system "unlawfully reduc[ed] the amount of overtime wages it paid to its employees" for "time spent working in excess of forty hours in a workweek."

Plaintiff has sufficiently alleged violations of the FLSA regarding overtime pay.   In Count II of the amended complaint, plaintiff seeks unpaid back wages pursuant to his entitlement and that of other similarly situated individuals to time-and-a-half for overtime hours worked in excess of forty hours in a week.   Thus, the court will deny defendant's motion

-18-

to dismiss Count II for failure to state a claim and will allow this claim to proceed as plaintiff is not seeking gap time pay.

V

In addition, defendant urges this court to dismiss plaintiff's class claims under the PWPCL in Count III for failure to plead impracticability of joinder and numerosity under Rule 23.  Plaintiff responds that he is not required to plead the exact number of class members, which is information solely in defendant's possession, and that he is entitled to pre-certification discovery.

A class may not be certified unless the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied.  One of the prerequisites is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

The court must conduct a "rigorous analysis," including considering all relevant evidence and arguments presented, when deciding whether to certify a class.  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 315-16 (3d Cir. 2008).  The court also possesses "broad discretion to control proceedings and frame issues for consideration under Rule 23."  Id. at 310.  "In most cases, some level of discovery is essential to such an evaluation."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011).

-19-

        The dismissal of plaintiff's class allegations is
premature at this early stage without any discovery.  Whether
plaintiff may maintain a class action under the PWPCL must await
another day.  Accordingly, this court will deny without
prejudice defendant's motion to dismiss the putative class
claims under the PWPCL.

                                    VI

        Finally, defendant moves to dismiss plaintiff's claim
under the PHRA because one year has not yet elapsed since he
filed a Charge of Discrimination with the PHRC.  The PHRC has
exclusive jurisdiction over a claim for one year, and a
complainant may not file an action in court until one year has
passed since filing with the PHRC.  <u>Burgh v. Borough Council of
Montrose</u>, 251 F.3d 465, 471 (3d Cir. 2001).  Plaintiff concedes
that he filed the Charge of Discrimination with the PHRC in June
2020.  Count V will be dismissed without prejudice for failure
to exhaust administrative remedies.